**Thomas SITEMAN, Jr., Appellant,**

v.

**CITY OF ALLENTOWN and City
of Allentown City Council.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1997.

Decided May 14, 1997.

Gary M. Lightman, Harrisburg, for appellant.

Patricia A. Siemiontkowski, Allentown, for appellees.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

FRIEDMAN, Judge.

Thomas Siteman, Jr. (Siteman) [1] appeals from an order of the Court of Common Pleas of Lehigh County (trial court) dismissing Siteman's petition to review his discharge from employment as a police officer by the City of Allentown (City) and the City of Allentown City Council (City Council) pursuant to section 4408 of the Third Class City Code (Code).[2]

In a letter dated October 7, 1993, Wayne T. Stephens, Director of the City's Depart-

---

1. This case was reassigned to the authoring judge on April 8, 1997.

2. Section 4408 of the Code, Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 39408 (emphasis added), provides in pertinent part as follows:

   All employes subject to civil service shall be subject to suspension by the director of the department for misconduct, or violation of any law of this Commonwealth, any ordinance of the city, or regulation of the department, pending action by the city council upon the charges made against any of such employes. On hearing before the city council, where they may be represented by counsel, they may be fined or suspended ..., or they may be discharged by

city council, if found guilty of the charges made against them....

   Any civil service employe aggrieved by the action of the council in fining, suspending or discharging him shall have the right to appeal by petition to the court of common pleas within thirty days after the suspension or after receipt of written notice of such action by council which it shall be the duty of the council to give and the court shall hear the charges made against him de novo. The issue before the court shall be whether the action of the council shall be affirmed or be modified in any respect or whether the charges should be dismissed or whether the suspension ... shall be affirmed or rescinded....

ment of Police, notified Siteman that he was suspended without pay until City Council could adjudicate certain charges against him.[3] On October 20, 1993, Siteman's attorney made a formal request for a hearing before City Council and asked for more specific information concerning Siteman's alleged misconduct. (R.R. at 323a.)

On January 26, 1994, Thomas F. Bennis, a police captain, sent a letter to Siteman informing him that, as a result of further investigation, two additional charges had been filed against him.[4] On May 17, 1994, the Assistant City Solicitor provided Siteman with details about the specific incidents which gave rise to the charges against him. (R.R. at 323a–29a.)

City Council held a hearing on June 22, 1994, at which time Siteman objected to the police department's failure to provide sufficiently detailed notice of the charges against

him until May 17, 1994, seven months after Siteman's request for this information and one month before the hearing. (R.R. at 144a–46a.) Siteman stated that, due to the passage of time, he could not find the individuals named in the two most serious charges. (R.R. at 156a–57a, 159a.) City Council asked the parties to brief whether Siteman received sufficient notice of the charges and, if he did not, whether City Council had authority under the Code to dismiss the charges against Siteman on that basis.[5] (R.R. at 160a.)

After the parties submitted their briefs, Siteman objected that the police department's brief contained exhibits which amounted to evidence on the merits of the case which could prejudice members of City Council against Siteman.[6] On October 31, 1994, after argument, City Council voted three to two to dismiss all charges against Siteman with prejudice.[7] However, on No-

**3.** The letter asserted that Siteman had violated policies, regulations and general orders of the City's police department. (R.R. at 305a–12a.) With respect to these violations, the letter alleged that Siteman did:

1. Effect at least thirteen (13) loitering arrests without giving the proper required warning.
2. Draw and point his weapon in a situation where deadly force was not appropriate, and where he did not intend to use his weapon.
3. Not perform his duties as required by law, Department rules and regulations.
4. Not conduct himself in such a manner as to reflect most favorably on the Department.
5. Display bias on account of race.
6. Use harsh, profane, and insolent language.
7. Not act courteously and civilly in his dealings with others.
8. Tighten the handcuffs on an individual arrested for a summary offense, when the individual complained that the handcuffs were already too tight.
9. Keep non-violent summary arrest defendants handcuffed during the entire booking process.
10. Threaten to arrest an individual for resisting arrest because the individual was "Fidgety" in the rear seat of the patrol car.
11. Transport male and female prisoners in the same vehicle.
12. Transport adult and juvenile prisoners in the same vehicle.
13. Fail to report lost or missing nameplate.
14. Fail to wear nameplate on outermost garment.
15. Falsify an official police report.

16. Remove drug paraphernalia from a suspect without logging or recording same.
17. Fail to follow direct orders on two known occasions.
18. Strike a fleeing "Suspect" in the head with an impact instrument.

(R.R. at 306a.)

**4.** This letter further alleged that Siteman did:

19. Open cell, enter, and kick a shackled prisoner in the head.
20. Strike a verbally abusive drunken prisoner with an expandable baton.

(R.R. at 316a.)

**5.** Siteman's attorney pointed out that the May 17, 1994 letter never provided any details regarding charge number twenty and, as a result, that charge was withdrawn. (R.R. at 152a–53a.)

**6.** Before the parties could argue their positions before City Council, the parties reached a tentative settlement agreement; however, by letter dated September 19, 1994, the parties informed City Council that their attempt to settle the case was ultimately unsuccessful and, therefore, City Council should proceed with its hearings. (R.R. at 466a.)

**7.** Two of the seven City Council members recused themselves because of a conflict of interest, thereby leaving five members to vote on the matter. (R.R. at 531a.) City Council members Emma D. Tropiano and Alton W. Frey and City Council President Ernest E. Toth voted in favor of Siteman. (R.R. at 170a–71a.)

vember 2, 1994, considering the same matter as a resolution at a public meeting, City Council voted three to two *against* Siteman, with the president of City Council changing his vote. (R.R. at 530a–33a.)

The next day, the City Council member who had moved to dismiss the charges against Siteman recused himself because he was convinced that Siteman's due process rights had been violated. (R.R. at 534a–35a.) On December 1, 1994, Siteman's attorney sent a letter to the remaining four City Council members, asking them to recuse themselves. (R.R. at 467a–68a.) The other City Council member who voted to dismiss the charges against Siteman subsequently recused herself, leaving only three members of City Council qualified to vote on the matter. (R.R. at 502a–03a.)

On January 25, 1995, at the first evidentiary hearing, Siteman's attorney moved to dismiss the charges against Siteman because three City Council members do not constitute a quorum and because the remaining members of City Council were not an impartial tribunal. (R.R. at 175a–78a.) When City Council failed to rule on the motion and proceeded to take evidence, Siteman and his

attorney left the proceedings in protest. (R.R. at 179a.)

After several additional hearings, the remaining three members of City Council upheld the charges against Siteman and adopted a resolution discharging him from employment with the City. (R.R. at 487a–503a.) Siteman appealed to the trial court, which did not disturb City Council's resolution. (R.R. at 506a–18a.)

■ On appeal to this court,[8] Siteman argues that the final City Council vote was not proper because the three City Council members did not constitute a quorum.[9] We agree.

City Council's quorum rule is that "[a] quorum shall be four (4) members of Council or all of the members of Council, whichever number is less." [10] (R.R. at 668a.) Section 607 of the Code, 53 P.S. § 41607, provides that a majority of the whole number of members of the council shall constitute a quorum.[11] Here, the *whole* number of City Council members, or *all* of the members of City Council, is seven members. Thus, under either the rule or the statute, a quorum is four members.

---

**8.** Where a full and complete record was made before the local agency, our scope of review is limited to whether the local agency violated constitutional rights or committed an error of law, or whether necessary findings of fact are supported by substantial evidence. Section 754 of the Administrative Agency Law, 2 Pa.C.S. § 754.

**9.** Siteman also argues that: (1) City Council violated Siteman's due process rights by failing to provide adequate notice of the charges against him and a meaningful opportunity to be heard; (2) the City improperly attached evidence to its pre-hearing brief on Siteman's motion to dismiss the charges; and (3) City Council improperly reversed its executive session vote to dismiss the charges with prejudice. However, because of our disposition of the first issue, we decline to address these matters.

**10.** Under Rule II(B) of City Council's rules and regulations, "[a] quorum shall be four (4) members of Council or all of the members of Council, whichever number is less. If there is no quorum, the members present may adjourn." (R.R. at 668a.)

Pursuant to Rule XV of City Council's rules, Robert's Rules of Order shall govern the pro-

ceedings of the Council on matters not specifically provided for in the rules. (R.R. at 660a.) Robert's Rules of Order states that a quorum is the number of members entitled to vote who *must be present in order that business can be legally transacted.* Moreover, if the chair has called a meeting to order after finding that a quorum is present, the continued presence of a quorum is presumed unless the chair or a member notices that a quorum is no longer present. If the chair notices the absence of a quorum, the chair must declare the fact before taking any vote, which he or she can no longer do unless in connection with a motion to adjourn, to recess or to obtain a quorum. Furthermore, the lack of a quorum can be given retroactive effect to nullify a prior action taken when a quorum was not present. Robert's Rules of Order § 39 (1981).

**11.** Section 607 of the Code, 53 P.S. § 41607 (emphasis added), provides:

(a) Council shall determine its own rules of procedure, not inconsistent with ordinance or statute. *A majority of the whole number of members of the council shall constitute a quorum,* but no ordinance shall be adopted by the council without the affirmative vote of a majority of all the members of the council.

■ In this case, all but three members of City Council recused themselves on the matter of Siteman's discharge. A recused member, even when that member is present and recusing, does *not* count towards a quorum.[12] Thus, because City Council did not have a quorum when it conducted its hearings on this matter and, afterward, when it adopted the resolution to discharge Siteman, there was, in reality, no meeting and no valid vote.

■ Nevertheless, in certain cases, this court has recognized the Rule of Necessity, a principle at common law that requires a judge with a personal interest in a case to proceed if the case cannot be heard otherwise. *Sherman v. Kaiser*, 664 A.2d 221 (Pa. Cmwlth.1995). If *all* of the members of a tribunal are subject to recusal, the tribunal must consider the case despite the personal interest or bias of the members; otherwise, the public and the litigants would be denied a decision in the matter. *Id.*

■ The Rule of Necessity has also been applied where a tribunal could not proceed due to the lack of a quorum. In *In re Complaint of Doe*, 2 F.3d 308 (8th Cir. Jud. Council 1993), a complaint was filed in the Eighth Circuit Court of Appeals which named as respondents most of the judges which comprise the 15–member Judicial Council of the Eighth Circuit.[13] The most senior member of the court in regular active service who was not named as a respondent dismissed the complaint. The complainant then filed a petition for review with the Judi-cial Council. However, all but two members of the Judicial Council were parties to the proceeding and, because the two members *did not constitute a quorum*, the Judicial Council could not proceed. The tribunal noted that, under the Rule of Necessity, "if the judges who ordinarily would hear the case are likely to disqualify themselves because of their interest in its outcome, they may hear the case if, otherwise, it would not be heard at all." *Id.* at 310. Applying the Rule of Necessity, the Judicial Council held that the judges who might have recused themselves were permitted to review the case. Thus, the tribunal was able to convene a quorum.[14]

We believe that this is the proper approach here. Because the three City Council members who did not recuse themselves did not constitute a quorum, we can invoke the Rule of Necessity to permit those members who had recused themselves to hear this case. Accordingly, we vacate City Council's resolution discharging Siteman from employment and remand this case for hearings before and a determination by the entire City Council.

### ORDER

AND NOW, this 14th day of May, 1997, we reverse the order of the Court of Common Pleas of Lehigh County, dated November 9, 1995, and vacate the resolution of the City of Allentown City Council, dated April 5, 1995. Further, we remand this case to the Court of Common Pleas for remand to the City Coun-

---

**12.** In *Meixell v. Borough Council*, 370 Pa. 420, 422, 88 A.2d 594, 595 (1952), a statute provided that "[a] majority of the entire membership of council shall constitute a quorum." The council, consisting of nine members, took a vote to elect a Burgess. Two of the nine members voted for themselves. Because those two acted to promote their own personal and pecuniary interests, their votes were declared illegal and void. In explaining how to interpret the vote, our supreme court stated:

> Since the vote of 2 [council members] was illegal and void, neither their vote nor their presence should be counted in computing a quorum or a majority. (Members having an interest are generally *excluded* in counting a quorum.) That left 7 valid votes—more than a quorum.

*Meixell*, 370 Pa. at 424, 88 A.2d at 595–96 (emphasis added) (citation omitted). Likewise, here,
we cannot count those who have recused themselves in determining whether a quorum was present to discharge Siteman.

In *DiGiacinto v. City of Allentown*, 486 Pa. 436, 406 A.2d 520 (1979), which both parties discuss in their briefs, the issue was the number of votes necessary to take official action *once a quorum is present*. Because that is not the issue here, *DiGiacinto* is not applicable.

**13.** The action was a judicial conduct proceeding brought under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980, 28 U.S.C. § 372(c).

**14.** As in *In re Complaint of Doe*, we believe it is imperative that, before a particular tribunal proceeds under the Rule of Necessity, the tribunal must invoke the doctrine on the record and explain its applicability to the case before the tribunal.

cil for further proceedings before the entire City Council.

Jurisdiction relinquished.

COLINS, President Judge, concurs in the result only.

SMITH, J., dissents.

KELLEY, J., concurs in the result only.

DOYLE, Judge, concurring.

I am in full agreement with the majority opinion as written by Judge Rochelle S. Friedman and write separately only to clarify one point. During oral argument of the appeal on February 5, 1997, the Court heard conflicting versions of how many members of City Council were actually present at the public meeting on April 5, 1995, when the vote was taken to dismiss officer Thomas Siteman. Although the record is clear that only three Council members *voted*, the record is anything but clear regarding how many members were present and not voting. The precise issue before the Court then became whether the presence of other members of Council, *if* they were present, would be included in the count to determine the presence of a quorum. We hold today, following the majority of jurisdictions in the United States, *see* 2 Am.Jur.2d *Administrative Law* § 100 (1994); 67A C.J.S. *Parliamentary Law* § 6(b) (1978), and cases cited therein, that where a member of any board, commission or other similar body *recuses* himself or herself, regardless of that member's presence at the meeting, such presence may not be counted in determining the existence of a legal quorum. *See King v. New Jersey Racing Commission,* 103 N.J. 412, 511 A.2d 615 (1986). However, where a member merely *abstains* from voting, such member's presence does count toward the required number needed for a quorum. *Walker Pontiac v. Department of State,* 136 Pa.Cmwlth. 54, 582 A.2d 410 (1990); *see also* 59 Am.Jur.2d *Parliamentary Law* § 12 (1987) ("Abstention and the absence of a voter are not to be treated alike. The abstaining voter is counted in determining the

presence of a quorum, while the absent voter is not included.").